Frank BUTTITTA, Plaintiff–Appellant,

v.

CITY OF CHICAGO, et al.,
Defendants–Appellees.

No. 92–3631.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 21, 1993.

Decided Nov. 9, 1993.

Rehearing Denied Dec. 15, 1993.

Anthony S. DiVincenzo (argued), Campbell & DiVencenzo, Rick M. Schoenfield, Schoenfield & Swartzman, Chicago, IL, for plaintiff-appellant.

Patricia M. Carroll–Smit, Asst. Corp. Counsel, Amy E. Neuman, Lawrence Rosenthal, Deputy County Council, Mardell Nereim (argued), Kelly R. Welsh, Asst. Corp. Counsel, Eileen Brewer, Benna R. Solomon, Office of the Corp. Counsel, Appeals Div., Chicago, IL, for defendants-appellees.

Before FLAUM and ROVNER, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

FLAUM, Circuit Judge.

This case presents an issue of first impression requiring this court to construe Section 5–156 of the Illinois Pension Code. 40 ILCS 5/5–156. In 1986, Chicago police officer Frank Buttitta ("Buttitta") suffered an ankle injury in the line of duty that caused him to go on disability leave. In 1989 and again in 1991, the Chicago Police Department ("Police Department") refused to reinstate Buttitta to active duty despite the fact that on both occasions the Retirement Board of the Policeman's Annuity and Benefit Fund ("Board") had "returned [Buttitta] to active service," pursuant to Section 5–156. Buttitta then sued the City of Chicago ("City") under 42 U.S.C. § 1983, alleging that by failing to reinstate him, both in 1989 and in 1991, the City had deprived him of a property interest created by Section 5–156 without due process of law. The district court dismissed Buttitta's claim and granted summary judgment for the City. On appeal, Buttitta asserts that the district court erroneously construed Section 5–156. We conclude that the district court erred in its construction of Section 5–156; nevertheless we affirm because we find that Buttitta has not suffered a deprivation of a protectible property interest.

I.

Officer Buttitta joined the Chicago Police Department in 1967. In March, 1986, Buttit-ta injured his ankle in the line of duty and was placed on the police department's Medical Roll. On September 5, 1987, the Board awarded Buttitta duty disability benefits, entitling Buttitta to 75% of his normal salary, but removing him from the Medical Roll and thus from active duty.

On May 24, 1989, Dr. Richard Brash, a private orthopedic surgeon, advised Buttitta that he could return to work. On June 7, 1989, Dr. S. David Demorest, the Board's staff physician, examined Buttitta and concurred with Dr. Brash's assessment. On June 29, 1989, James B. Waters, Jr., the Executive Director of the Pension Board, sent a letter to the Police Department concluding as follows:

[O]n the recommendations of Dr. Demorest and Dr. Brash we are returning Officer Buttitta to you for assignment, in accordance with the provisions of Chapter 108½, Article 5–156 of the Police Pension Act.

Following the communication from the Board, the Police Department's Medical Services Section examined Buttitta as required by the Police Department's General Order No. 40–5.[1] The Police Department agreed with the Board's determination that Buttitta was no longer disabled by the ankle injury. However, on July 13, 1989, the Commander of the Personnel Division of the Police Department sent a letter to Buttitta denying his reinstatement because of a "significant elevation of hepatic enzymes, indicative of an active inflammatory process in the liver."

On October 26, 1989, the Board adjusted Buttitta's status from "duty disability" to "ordinary disability" in order to reflect the fact that Buttitta's current disability—the liver inflammation—was not duty related. Accordingly, Buttitta's disability benefit was reduced from 75% to 50% of of salary, using as a base the salary Buttitta would have been receiving had he been an active employee on July 13, 1989, the date on which the police

---

1. General Order No. 40–5 requires a physical examination before a police officer who has been absent for 30 days or more may return to normal duties.

department informed him that he would not be returned to active duty.[2]

In 1991, Buttitta again sought reinstatement. Buttitta's personal physician, Dr. Hillary Neybert, examined him on February 25, 1991, and summarily declared him "medically fit for active police service." The Board's physician, Dr. Demorest, then re-examined Buttitta on March 16, 1991. Dr. Demorest's report offered no opinion on Buttitta's fitness for duty, concluding:

> It would thus seem that his prior liver enzyme elevation has not resolved. Officer Buttitta was denied reinstatement by the police surgeon previously due to elevated enzymes. His condition remains unchanged, albeit not serious. I would be interested in hearing the police surgeon's comments.

Despite Dr. Demorest's report, the Board again returned Officer Buttitta to the police department for assignment. In a May 2, 1991, letter communicating the Board's decision, Executive Director Waters specifically relied on Dr. Neybert's recommendation and did not mention Dr. Demorest's report. The Police Department again examined Buttitta, and again refused reinstatement because of "continued elevation of liver enzymes indicative of liver dysfunction."

On February 21, 1992, Dr. Demorest examined Buttitta for a third time. In his April 2, 1992, report, Dr. Demorest diagnosed Buttitta with alcoholic hepatitis and concluded that "[b]ased on his current exam and blood test, Officer Buttitta is unable to return to full active police duty." No later medical reports appear in the record.

On May 19, 1992, Buttitta's counsel requested "a full hearing from the [Pension] Board regarding Officer Buttitta's fitness" for active duty. Counsel asserted that Buttitta had stopped drinking and had received counseling regarding his alcohol use. No response to that request is reflected in the record. Buttitta then commenced his § 1983 action in federal district court, alleging that the City deprived him of a property interest created by Section 5–156 without due process of law by failing to reinstate him to active service in 1989 and 1991.

## II.

■ The Due Process Clause of the Fourteenth Amendment forbids a state from depriving any person of life, liberty, or property without due process of law. The Supreme Court has interpreted the constitutional guarantee of due process to encompass both procedural and substantive rights. Officer Buttitta asserts that his claim "has always been for denial of procedural due process." Appellant's Reply Br. at 16. Due process is a flexible concept which "calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972); *Perry v. F.B.I.*, 781 F.2d 1294, 1303 (7th Cir.) (en banc), *cert. denied*, 479 U.S. 814, 107 S.Ct. 67, 93 L.Ed.2d 25 (1986). However, "the range of interests protected by procedural due process is not infinite." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 570, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). In this case, to sustain a claim under the due process clause Buttitta must demonstrate: (1) a cognizable property interest; (2) a deprivation of that property interest; and (3) a denial of due process. *See Schroeder v. City of Chicago*, 927 F.2d 957, 959 (7th Cir.1991); *Bigby v. City of Chicago*, 766 F.2d 1053, 1056 (7th Cir.1985), *cert. denied*, 474 U.S. 1056, 106 S.Ct. 793, 88 L.Ed.2d 771 (1986).

■ As the district court correctly observed, in any due process case where the deprivation of property is alleged, "the threshold question is whether a property interest actually exists." *Buttitta v. City of Chicago*, 803 F.Supp. 213, 218 (N.D.Ill.1992). Property interests are not created by the Constitution; rather, "they are created and their dimensions are defined by existing

---

**2.** The Board has made disability payments to Buttitta without interruption since September 5, 1987. As the district court found, during the period between the Board's returning Buttitta to the police department for active service and the department's denial of reinstatement the Board apparently continued to pay the benefit to ensure that Buttitta would have some income during the reinstatement process. The Board has continued to make disability payments since the second denial of reinstatement because it believes that Buttitta suffers from a disabling liver condition.

rules or understandings that stem from an independent source such as state law...." *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985); *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709. It is well settled law in this circuit that a state statute may create a protectable property interest in employment. *Hohmeier v. Leyden Community High Schools Dist. 212,* 954 F.2d 461, 464 (7th Cir.1992); *Domiano v. River Grove,* 904 F.2d 1142, 1148 (7th Cir.1990); *Farmer v. Lane,* 864 F.2d 473, 478 (7th Cir.1988). However created, a property interest is not constitutionally cognizable unless a person has a "legitimate claim of entitlement" to the benefit. *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709. A unilateral expectation of the benefit will not suffice. *Id.*

In the employment context, "[p]roperty interests exist when an employer's discretion is clearly limited so that the employee cannot be denied employment unless specific conditions are met." *Colburn v. Trustees of Indiana University,* 973 F.2d 581, 589 (7th Cir.1992). When a job thus becomes "property" within the meaning of the Due Process Clause, the state may not take it away without notice and a hearing— though "this procedure need not be elaborate and can be satisfied with less than a full evidentiary hearing." *Smith v. Town of Eaton,* 910 F.2d 1469, 1472 (7th Cir.1990), *citing Loudermill,* 470 U.S. at 547, 105 S.Ct. at 1496; *see also Roth,* 408 U.S. at 577, 92 S.Ct. at 2709 ("It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate [a claim of entitlement to a property interest].") Failure to provide due process in this circumstance, as the district court observed, is actionable under § 1983, "the all-purpose statutory vehicle for compensating the victims of constitutional torts." *Buttitta,* 803 F.Supp. at 218.

Officer Buttitta asserts that Section 5–156 of the Illinois Pension Code creates the property interest that he seeks to vindicate through his § 1983 action. Section 5–156, entitled "Proof of duty or ordinary disability—Physical examinations", provides:

Proof of duty or ordinary disability shall be furnished to the board by at least one licensed and practicing physician appointed by the board. In cases where the board requests an applicant to get a second opinion, the applicant must select a physician from a list of qualified licensed and practicing physicians who specialize in the various medical areas related to duty injuries and illnesses, as established by the board. The board may require other evidence of disability. A disabled policeman who receives duty or ordinary disability benefit shall be examined at least once a year by one or more physicians appointed by the board. When the disability ceases, the board shall discontinue payment of the benefit, and the policeman shall be returned to active service.

With the exception of the district court's opinion in this case, no reported decisions of any court have considered whether § 5–156 creates a property interest of the type claimed by Officer Buttitta.

Buttitta maintains that the last sentence of § 5–156 creates a property interest in reinstatement for any officer whom the Pension Board finds no longer disabled. He argues that § 5–156 goes far beyond the limitation of an employer's discretion required to create a property interest. *See Colburn,* 973 F.2d at 589. As Buttitta reads § 5–156, the statutory language empowers the Board with exclusive authority first to determine when a disability ends and, second, to compel a return to active duty. Buttitta further submits that his construction of § 5–156 protects both the Police Department's interest in keeping unfit officers off the streets and the Board's interest in preserving pension funds. The Police Department makes the initial determination of whether a disability exists while the Board makes the determination of whether the disability has ceased. Finally, Buttitta insists that the Police Department may not simply ignore the Board's conclusion that an officer is no longer disabled, but instead must challenge the Board through administrative or judicial review. Because the Board determined that Buttitta was no longer disabled and "returned [him] to active service" pursuant to § 5–156, both in 1989 and in 1991, Buttitta concludes that on both occasions the Police Department's decisions to deny rein-

statement deprived him of a property interest without due process of law.

The district court rejected Buttitta's construction of § 5–156. While agreeing that the statutory language mandating a "return[ ] to active service" creates some kind of property interest, the court opined that Buttitta's suggested construction of § 5–156 "would defy common sense." The court found nothing in the language or logic of the statute that empowers the Board to make a general finding of fitness for actual police duty. The court held that § 5–156 empowers the Board to decide whether the officer's original disability has ceased, but it does not mandate reinstatement "so long as the [police department] determines that the officer suffers from a *different* disability." (emphasis in original). In addition, even assuming that § 5–156 creates a property interest in full reinstatement before the department can return an officer to disability status, the court concluded that Buttitta was not deprived of any property interest within the meaning of the Due Process Clause.

On appeal, Buttitta continues to assert the argument he presented in the district court that § 5–156 vests in the Pension Board broad power to determine whether a police officer is no longer disabled and unfit for active duty. In the alternative, he embraces the district court's construction, contending that a correct application of that construction would require reversal of summary judgment with respect to the 1991 denial of reinstatement. Buttitta further argues that the City is estopped from raising new arguments that justify the result, if not the reasoning, of the district court because the City itself advanced the construction of § 5–156 adopted by the district court.

We first turn to the question of whether the district court erroneously applied its own construction of § 5–156. Buttitta concedes that under the district court's construction, the 1989 denial of reinstatement was proper because the police department determined that Buttitta suffered from a *different* disability—liver disease—than that which the Board recently had determined no longer existed. But, according to Buttitta, the 1991 denial of reinstatement was improper be-cause the police department failed to determine that Buttitta suffered from a different disability. To the contrary, the department denied reinstatement on the basis of the same liver condition for which it had denied reinstatement two years earlier.

We conclude that the district court erroneously applied its own standard; however, we do not reverse summary judgment for the City because we believe that both Buttitta and, to a lesser extent, the district court read too much into the statutory language of § 5–156. While § 5–156 may create a property interest in police officers seeking to make the transition from disability to active duty, we believe that property interest narrower than either Buttitta or the district court contend. For this reason, we reject Buttitta's waiver argument. As tempting as it may be to bind the City to its earlier argument, to do so would leave uncorrected what we believe to be an erroneous interpretation of law. A fundamental premise of our constitutional system is that "[i]t is emphatically the province and duty of the judicial department to say what the law is." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803). In "saying what the law is," we are mindful of the difficulty of construing statutes for the first time. Nevertheless, we disagree with the parties and the district court and must so hold.

We cannot quarrel with Buttitta's assertion that we must follow the clear and unambiguous intent and language of the legislature. This is, after all, a primary canon of statutory interpretation. *Kraft, Inc. v. Edgar*, 138 Ill.2d 178, 149 Ill.Dec. 286, 291, 561 N.E.2d 656, 661 (Ill.1990). But the statute's language providing "[w]hen the disability ceases, the board shall discontinue payment of the benefit, and the policeman shall be returned to active service" does not bestow upon the Pension Board the exclusive authority to determine when a disability ends and to compel the police department to return an officer to active duty. This language, while clear and unambiguous for its purpose, simply does not address the transfer of police officers from disability to active duty in the manner suggested by Buttitta.

■ We then turn to another basic canon of statutory interpretation: "in ascertaining the meaning of a statute, the statute should be read as a whole with all relevant parts considered." *Id.* Buttitta's argument focuses exclusively on the last sentence of § 5–156. Reading § 5–156 as a whole, we believe that the statute's language is directed primarily toward the prevention of fraudulent disability claims. In essence, the statute establishes proof of disability—in the first instance and periodically thereafter—as a precondition for payment from the Board. Only the final sentence refers to the cessation of the disability and the transfer of the officer to active service. The phrases "when the disability ceases" and "shall be returned to active service" must be read in context. We find it implausible that the Illinois legislature would use such language in the context of what is primarily an anti-fraud statute to grant the Pension Board an extraordinary measure of control over the transfer of police officers between disability and active duty.

■ We believe that § 5–156 does intend some role for the Board in the transfer process, albeit a lesser role than either Buttitta or the district court envision. We note that the Board has a duty to preserve pension funds and the Police Department has a duty to keep unfit officers off the streets. Because the process of transferring police officers between disability and active duty directly implicates both of these duties, we are convinced that § 5–156 requires both the Board and the Police Department to be involved in this process. Thus, we construe the statutory directive—that the Board return an officer to active service following a finding that the disability has ceased—as merely an initial step in the transfer process. Therefore, § 5–156 creates in police officers a property interest in being returned to the department for an opportunity to demonstrate their fitness for active duty. The Board and the officer have a pecuniary interest in starting this process as soon as possible following the cessation of the disability. Nothing in the statute, however, requires the Police Department either to accept the Board's conclusion that the disability has ceased or to immediately place the officer on active duty. If the Police Department agrees that the disability has ceased, it must follow its procedures for reinstatement to active duty. If the Department still believes the officer unfit for active duty, it returns the officer to the jurisdiction of the Board. As we construe the statute, a disability ceases only if the Board and the department agree to that effect. Thus, if the Police Department denies reinstatement because of disability, whether new or pre-existing, the Board must continue payment of the benefit.[3] Finally, as discussed in more detail below, an officer who believes the Police Department mistakenly has denied reinstatement may seek redress through a grievance procedure as outlined in the collective bargaining agreement.

We conclude that § 5–156 creates in police officers a property interest to the extent that police officers who have been disabled may not be deprived of the opportunity to demonstrate their fitness for active duty. This interest indeed may have existed previously, either by custom or agreement, but the legislature's enactment of § 5–156 endows the interest with a degree of permanence that it heretofore has lacked.

### III.

Having found that § 5–156 creates a cognizable property interest, we now must turn to

3. We note that our construction of the statute comports rather closely with the procedures evidently invented and followed by the Board and the Police Department in the absence of any guidance from this or any other court. Two examples will suffice. First, consider the March, 1991, report of Dr. Demorest, the Board's staff physician. In that report, Dr. Demorest did not conclude that Buttitta's disability had ceased and did not offer an opinion on Buttitta's fitness for duty. He did, however, indicate that he "would be interested in hearing the police surgeon's comments." Plaintiff's Motion for Summary Judgment, Exhibit J. We believe this comment reflects an understanding, at least on the part of Dr. Demorest, of a cooperative transfer process in which the findings of the Board's physicians as to the cessation of a disability are not dispositive. Second, recall that the Board has continued to make the disability payments to Buttitta since the department refused his reinstatement in 1991 because it believes that Buttitta continues to suffer from a disabling liver condition. *See* Affidavit of James B. Waters, Jr. at ¶ 3.

the question of whether the Board and/or the Police Department deprived Officer Buttitta of an opportunity to demonstrate his fitness for active duty in 1989 and again in 1991.

We look first at the record. Dr. Brash's report of May 24, 1989, was the first indication that Buttitta's ankle injury had healed sufficiently for Buttitta to return to active duty. Two weeks later, the Board's Dr. Demorest examined Buttitta and concurred with Dr. Brash's opinion. By the end of June, the Board had concluded its review of Buttitta's disability and, on June 29, returned Buttitta to the jurisdiction of the Police Department. The Police Department then required a physical examination of Buttitta, pursuant to General Order 40-5, because he had been inactive for more than thirty days. This examination revealed that Buttitta suffered from a liver condition, and reinstatement was denied on this basis. The department notified Buttitta of its decision, and the grounds therefor, by letter on July 13. Buttitta's 1991 attempt to gain reinstatement followed a similar pattern. In late February, Buttitta's personal physician, Dr. Neybert, summarily declared Buttitta "fit for active police service," without comment as to his liver disorder. About three weeks later, the Board's physician, Dr. Demorest, examined Buttitta. Dr. Demorest concluded that the liver disorder had not been resolved and offered no opinion as to whether Buttitta was fit for active duty. The Board, relying on Dr. Neybert's report, returned Buttitta to the Police Department "for assignment" on May 2, 1991. Again the Police Department conducted its own physical examination. Like Dr. Demorest, the department's physicians found continued liver enzyme elevation and denied reinstatement on that basis in a letter dated June 4, 1991.

On this record, we cannot conclude that Buttitta has suffered a deprivation of his property interest. We find that the Board expeditiously complied with its statutory duty to return Buttitta to active service upon concluding that his disability had ceased. We also find that the Police Department physical examination provided sufficient opportunity for Buttitta to demonstrate his fitness for active duty. Buttitta had no legitimate claim of entitlement to reinstatement to active duty. He did, however, have an entitlement to a fair opportunity to demonstrate his fitness for active duty. The Department requirement that Buttitta submit to a physical examination, just like any other officer who had been inactive for thirty days or more, was reasonable and not contrary to either § 5–156 or § 18.6 of the Collective Bargaining Agreement.[4] Moreover, there is no evidence in the record that Buttitta's examination was in some other way unfair. Finally, as we have construed § 5–156, whether the Police Department denied reinstatement on the basis of a new disability—as in 1989—or an existing disability—as in 1991—is of no legal consequence. Had Buttitta succeeded in demonstrating his fitness, he then would have been entitled to reinstatement. Having failed to do so, Buttitta was properly returned to the jurisdiction of the Pension Board. Buttitta cannot claim that the Board or the Police Department deprived him of a property interest in 1989 or in 1991.

### IV.

Even if Buttitta's being denied reinstatement could be a deprivation of property within the meaning of the Due Process Clause, Buttitta could not prevail because there was no denial of due process of law.

---

**4.** Section 18.6 of the Collective Bargaining Agreement between the City and the police union states, in relevant part:

If the employer requires and specifies certain additional medical tests to be performed and passed as a condition of the officer's return, and said tests were not, and are not normally performed in the normal course of appropriate medical treatment for the illness or injury involved, then the Employer shall, at its option either provide the test, or reimburse the officer for the cost of both the test and any required

record thereof to the extent that such costs is not covered by insurance.

Buttitta argues that this language precluded the police department physicians from performing the same tests that the Board's physician and his own personal physician previously had performed on him in the normal course of treatment for his liver ailment. We read this section as establishing conditions under which the City must bear the cost of testing, but we do not believe it bars duplicative testing.

As we noted above, due process is a flexible concept whose procedures depend on the particular circumstances of each case. *See, e.g., Perry,* 781 F.2d at 1303. In general, due process requires notice of charges and an opportunity for a hearing appropriate to the nature and gravity of those charges. *Bigby,* 766 F.2d at 1058. To determine whether due process is satisfied as to form and timing in a particular case, we must apply the three-part test articulated in *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 963, 47 L.Ed.2d 18 (1976). This test requires us to balance:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335, 96 S.Ct. at 903.

■ Applying the *Mathews* framework to this case, we hold that the post-deprivation grievance procedure outlined in Article 9 of the Collective Bargaining Agreement satisfied the requirements of due process. With respect to the first and third factors, we regard as equally important Buttitta's interest in demonstrating his fitness for duty and the department's interest in establishing that Buttitta was indeed fit before reinstating him to active duty. With respect to the second factor—risk of error—we note the similarity between this case and *Mathews.* The plaintiff in *Mathews* had a right to benefits if he could prove that his disability still existed. *See* 424 U.S. at 324, 96 S.Ct. at 897–98. Buttitta, by contrast, had a right to reinstatement to active duty if he could prove that his disability had ceased. In concluding that a post-deprivation hearing satisfied due process, the Supreme Court noted that the risk of error was low because the decision of whether an individual is disabled "will turn, in most cases, upon 'routine, standard, and unbiased medical reports by physician specialists.'" *Id.* at 344, 96 S.Ct. at 907. As in *Mathews,* the question here is whether the plaintiff was disabled, the answer depends upon medical reports, and the risk of erroneous deprivation is too slight to require a pre-deprivation hearing.

This court has recognized that a grievance procedure under a collective bargaining agreement can satisfy due process, even when a public employee has been discharged. *See Winston v. United States Postal Service,* 585 F.2d 198, 209–210 (7th Cir.1978). Under the terms of the agreement between the City and the Chicago police union, an officer who believes that the department has deprived him of an opportunity to demonstrate his fitness for active duty may file a grievance immediately upon receiving notice that he has been denied reinstatement. Under the grievance procedure, an officer has a right to be provided with all medical records in the possession of the department and to receive a response to the grievance within ten days. If an officer still is not satisfied, he may pursue alternative avenues of redress provided in the Agreement, including arbitration. This grievance and arbitration procedure adequately satisfies the requirements of due process.

V.

We construe § 5–156 of the Illinois Pension Code to create in police officers a property interest in being returned by the Pension Board to the police department for an opportunity to demonstrate their fitness for active duty. We hold that the Chicago Police Department did not deprive Officer Frank Buttitta of this property interest, either by requiring him to submit to a physical examination or by denying Buttitta's reinstatement on the basis of the results of that examination. We observe also that even if the Police Department's denial of reinstatement could be a deprivation of property, Buttitta could not prevail because the department's grievance procedure satisfies the requirements of due process. For these reasons, we AFFIRM the judgment of the district court.