# In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 04-2072

JERRY L. DEEN,

*Plaintiff-Appellant,*

v.

TIMOTHY DAROSA, DAN KENT,
TERESA KETTLEKAMP, et al.

*Defendants-Appellees.*

———————

Appeal from the United States District Court
for the Central District of Illinois.
No. 02 C 3125—**Richard Mills**, *Judge.*

———————

ARGUED JANUARY 13, 2005—DECIDED JULY 8, 2005

———————

Before ROVNER, EVANS, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* Jerry Deen, a former officer of the Illinois State Police ("ISP"), filed this action under 42 U.S.C. § 1983, asserting that ISP officials deprived him of a constitutionally protected property interest without due process of law when they refused to reinstate him from medical leave status to active duty. The district court held that Deen had suffered a deprivation of a protected property interest but received all the process that was due to him under *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985).

We affirm, but on different grounds. Applying *Buttitta v. Chicago*, 9 F.3d 1198 (7th Cir. 1993), we conclude that Deen did not have a constitutionally protected property interest in reinstatement per se, but, rather, had a more limited property interest in an opportunity to demonstrate his fitness for return to active duty under an ISP policy directive that governs officers' reinstatement from medical leave. That policy empowers the ISP's Medical Board to determine the fitness for return to active duty of employees placed on medical duty status, and prescribes the procedures to be followed by the board in making that determination. On the undisputed facts, it is clear that Deen was afforded all the process he was due under the policy directive, and the defendants were entitled to summary judgment.

## I. Background

Once a sergeant in the ISP, Deen was relieved from active duty in 1997 after officials discovered he had engaged in improper communications with another state agency and conduct unbecoming an officer. Deen continued to receive his regular salary and benefits. Approximately six months later, Deen submitted to a mandatory psychological evaluation. Dr. Michael Campion examined Deen and determined that he suffered from paranoid personality disorder and was "emotionally incapable of performing the duties of a state police officer." Thus, in August 1997, Dean was placed on medical leave and continued to receive his regular salary and benefits. Deen's medical leave expired in April 2000 and at that point the ISP placed him on "dock status," which meant that he continued to be a state police officer but received no pay and accrued no benefits.

On May 16, 2000, Deen wrote to ISP Director Sam Nolen to request reinstatement to active duty. The basis for Deen's request was a four-sentence letter from Dr. Joseph Bohlen, Deen's personal physician, stating summarily that

Deen was "capable of working in law enforcement in any capacity." Deen included a copy of Dr. Bohlen's letter with his own. On May 18, 2000, the ISP removed Deen from dock status and returned him to paid leave with benefits. On June 15, 2000, the ISP once again ordered Deen to undergo a psychological evaluation. Dr. Robert Marsh conducted this evaluation, and he opined that Dr. Campion had probably misdiagnosed Deen's condition back in 1997. Rather than being the result of a paranoid personality disorder, Deen's psychological problems were brought on by stress and depression caused by a bitter divorce and family trouble. Dr. Marsh also opined that Deen still had the potential to develop recurring depression with pseudodelusional features that might not respond well to treatment. He advised the ISP that if Deen were to resume active duty, the department would have to monitor his response to stress and provide quick, extensive support services should there be a recurrence of his psychological problems.

In the fall of 2000, the ISP wrote to Deen and told him to attend a meeting of the ISP's Medical Review Board on November 27, 2000. The board is the entity charged by the ISP with assessing its employees' fitness for duty; its five voting members are among the named defendants in this case (Nolen is the other defendant.) Under ISP regulations, the board's recommendations are either accepted or rejected by the ISP Director. Deen asked to reschedule his appearance before the board, and the board agreed, deferring his appearance until January 9, 2001. However, when the board convened on November 27 to discuss other matters, two members recited unfavorable information about Deen, principally the reluctance of some officers to work alongside him because of his psychological problems.

On January 9 Deen's case was presented to the board. The presentation included Dr. Campion's 1997 evaluation of Deen concluding that he was not fit for duty; Dr. Bohlen's letter supporting Deen's request for reinstatement; and Dr.

Marsh's evaluation of Deen concluding that Deen was fit for duty but had the potential to develop a recurring depression with pseudodelusional features. After the case was presented, Deen entered the room and told the board that Drs. Marsh and Bohlen both said he is fit for duty and that he is ready to get back to work. According to the minutes of the meeting, board members said nothing to Deen, and he left the room. Deputy Director Dan Kent, a board member, then told the board that other police officers were concerned about Deen's judgment and were afraid to work alongside him. Kent also said that he considered the accommodations required under Dr. Marsh's assessment to be unreasonable. The board recommended that Deen not be reinstated to active duty and that he remain on sick leave.

On February 1, 2001, Director Nolen accepted the board's recommendation, denying Deen's request to return to active employment. Deen wrote to Nolen asking him to reconsider; Nolen declined to reverse his decision. By June 2001 Deen had exhausted all of his accumulated sick leave. He received unemployment benefits until sometime in the spring of 2002 and then retired. Deen then sued the defendants under 42 U.S.C. § 1983, alleging that (1) he had a constitutionally protected property interest in his ISP job under the State Police Act, 20 ILCS §§ 2610/1 *et seq.*; (2) the defendants' denial of reinstatement was a pretense and that he was "effectively terminated" on the basis of their belief that he had engaged in misconduct; and (3) the procedure by which he was terminated failed to provide adequate due process.

The district court granted summary judgment to the defendants, concluding that although Deen had been "terminated" in 2001 and deprived of his property interest in continued employment, his unfitness for duty was a valid basis for termination and he was afforded adequate due process both prior to and after the termination under the standards enunciated in *Loudermill*, 470 U.S. at 546. In the

alternative, the court held that the defendants were entitled to qualified immunity insofar as Deen had not shown he had a clearly established right to anything beyond the protections afforded to him under *Loudermill*. Deen appealed.

## II. Discussion

Under 20 ILCS § 2610/14, ISP officers may not be removed, demoted, or suspended except for cause, and only following the examination and hearing procedure set forth in the statute. Deen was not removed, demoted, or suspended from the ISP; he was put on paid administrative leave and then on paid medical leave. Nonetheless, Deen asserts that the 1997 action placing him on leave status deprived him of a constitutionally protected property interest without due process. That is wrong, as the district court properly held, because Deen's salary and benefits remained at their previous levels while he remained on administrative leave; a job action that causes no pecuniary loss whatsoever does not implicate the Constitution. *Townsend v. Valls*, 256 F.3d 661, 676 (7th Cir. 2001); *Swick v. Chicago*, 11 F.3d 85, 86 (7th Cir. 1993); *see also Luellen v. East Chicago*, 350 F.3d 604, 613-14 (7th Cir. 2003) (loss of eligibility for "on-call pay" not a cognizable property right under the Due Process Clause).

The 2001 job action is somewhat different. In that year the defendants refused to reinstate Deen to active duty, effectively keeping him on paid medical leave until his pay and benefits eventually ran out. The district court treated the refusal to reinstate as a "termination" which deprived Deen of a protected property interest, relying upon what it regarded as the defendants' concession of the issue. However, a court is not bound to accept a concession when the point at issue is a question of law. " 'While . . . concessions are often useful to a court, they do not, at least as to ques-

tions of law that are likely to affect a number of cases in the circuit beyond the one in which the concessions are made, relieve this Court of the duty to make its own resolution of such issues.' " *United States v. Westmoreland*, 240 F.3d 618, 633 (7th Cir. 2001) (quoting *Strauss v. United States*, 516 F.2d 980, 982 (7th Cir. 1975)); *see also Saviano v. Comm'r of Internal Revenue*, 765 F.2d 643, 645 (7th Cir. 1985) (parties may not stipulate to legal conclusions to be reached by the court). The question whether a particular job action against a public employee implicates a constitutionally protected property interest is a question of law; "[p]roperty interests are not created by the Constitution, 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.' " *Loudermill*, 470 U.S. at 538 (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)). In the context of public employment, a "unilateral expectation" on the part of the public employee "will not suffice" to create a protected property interest; "a property interest is not legally cognizable unless a person has a 'legitimate claim of entitlement' to the benefit." *Buttitta*, 9 F.3d at 1202 (quoting *Roth*, 408 U.S. at 577).

Deen did not have a legitimate claim of entitlement to reinstatement to active duty service from medical duty status; the defendants' refusal to reinstate him was not the equivalent of termination. It did not lead to termination or even in the short term to a diminution in pay or benefits. Instead, it led to his remaining on medical leave, a status that accorded him full pay and benefits. True, Deen's medical leave was self-limiting and, absent a later reinstatement, Deen was eventually going to exhaust his benefits. But the conclusion of Deen's employment was not inevitable; and in any event, the eventual exhaustion of medical leave pay and benefits does not mean that Deen had a legitimate claim of entitlement to reinstatement to active duty.

Deen argues that the defendants' actions were largely a pretense, and that he was terminated not for medical reasons but because he was accused of misconduct. If this were a disciplinary termination, Deen would be owed the process set forth in 20 ILCS § 2610/14, which prescribes the rights of officers accused of misconduct and sets forth the procedures to be followed if the ISP seeks the officer's removal, demotion, or suspension. We recognize that the distinction between disciplinary and medical proceedings in the public employment context are susceptible to manipulation by a public employer who, for whatever reason, prefers not to proceed against an employee in a disciplinary setting. But Deen has not presented any evidence that the ISP's approach to his reinstatement from medical leave was a pretext for removing him because of misconduct.

Our decision in *Buttitta* is directly on point and controls this case. *Buttitta* held that the Chicago Police Department's refusal to reinstate one of its officers to active duty due to a liver condition did not deprive that officer of a constitutionally protected property interest. *Buttitta*, 9 F.3d at 1203. Buttitta's property interest in returning to work from medical duty status was conferred by a provision in the Illinois Pension Code setting forth the procedure to be followed in determining whether an officer receiving disability benefits should be returned to active duty. *Id.* Rather than conferring a full-fledged, constitutionally protected property interest in reinstatement to active duty, we held that the statute "creates in police officers a property interest in being returned to the department for an opportunity to demonstrate their fitness for active duty." *Id.* at 1204. The interest in an opportunity to demonstrate fitness is substantially less weighty than an interest in reinstatement itself. Police officers seeking reinstatement may not be deprived of the opportunity to demonstrate their fitness, we concluded, but because the department had fulfilled all its obligations to Buttitta under the statute, we held that he had received all the process he was due. *Id.* at 1205.

In Deen's case the ISP's obligations to employees on medical status who seek reinstatement are set forth in a policy directive titled "Medical Duty" and denominated "PER-038." It states that "[t]he ISP may assign employees to medical duty when there is sufficient evidence of their inability to perform at full duty and provide a mechanism for determining when the employee should return to full duty status." It then lays out the parameters of medical duty status and the composition, duties, and procedures of the Medical Review Board, the entity charged with moving employees into and out of medical duty status. As relevant to Deen's case, the directive provides that an employee may appear before the board to present pertinent facts, testimony, records, and reports regarding his case. It states that the board may request additional documentation from personal physicians, specialists, and the like. All recommendations made by the board are forwarded to the ISP Director for approval. An employee who disagrees with the decision may submit a written appeal to the Director within ten days of receipt of the decision.

From the record before us it is clear that Deen received the process due to him under the ISP's policy directive. Deen received notice of the November 27 meeting of the board, which was rescheduled to January 9, 2001 at his request. He appeared before the board and had the opportunity to provide it with information and documents. The board had before it the medical reports from the doctors who examined Deen. As required by the policy directive, the board forwarded its recommendation to Nolen, the ISP Director, who made the ultimate decision not to reinstate Deen. Deen appealed to Nolen for reconsideration of the decision, as was his prerogative. Each step of the process that resulted in the denial of Deen's reinstatement request conformed to the dictates of PER-038.

Because under *Buttitta* Deen did not have a constitutionally protected property interest in reinstatement itself, but,

rather, had a more limited interest in an opportunity to establish his fitness for return to active duty, he was not owed the full complement of due process protections set forth in *Loudermill*. This conclusion makes it unnecessary for us to address Deen's challenge to the district court's conclusion that the ISP's procedures provided sufficient pre-termination notice and opportunity to be heard under *Loudermill*. There is also no need to consider the defendants' claims of qualified immunity. The judgment of the district court is AFFIRMED.

A true Copy:

      Teste:

                      _____

                      *Clerk of the United States Court of Appeals for the Seventh Circuit*