2021 IL App (1st) 200501-U

FIRST DISTRICT,
FIRST DIVISION
March 22, 2021

No. 1-20-0501

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | |
|---|---|
| JENNIFER L. KONIARSKI, | Appeal from the Circuit Court of Cook County, Illinois. |
| Plaintiff-Appellee, | |
| v. | |
| THE RETIREMENT BOARD OF THE POLICEMAN'S ANNUITY AND BENEFIT FUND OF THE CITY OF CHICAGO, | No. 19 CH 07556 |
| | Honorable Sanjay T. Tailor, Judge Presiding. |
| Defendant-Appellant. | |

_____

JUSTICE COGHLAN delivered the judgment of the court.
Presiding Justice Walker and Justice Pierce concurred in the judgment.

**ORDER**

¶ 1     *Held*:  Retirement Board's decision to terminate plaintiff's disability pension on grounds that she was no longer disabled was against the manifest weight of the evidence where (1) medical evidence of her disability was undisputed and (2) the police department could not accommodate her disability with a limited-duty position.

¶ 2     Plaintiff Jennifer McClendon/Koniarski (Koniarski), a member of the Chicago Police

Department (CPD), injured her ankle during a training exercise in 2003. The Retirement Board

of the Policemen's Annuity and Benefit Fund of the City of Chicago (Board) determined that she was disabled and awarded her duty disability benefits.

¶ 3    In 2019, the Board found that Koniarski had recovered from her disability and terminated her benefits. Koniarski filed a petition for administrative review in the circuit court. The circuit court reversed the Board's decision, finding that the Board's order was against the manifest weight of the evidence since "[a]ll medical evidence introduced in the record indicates Petitioner has not fully recovered from her disability."

¶ 4                                    BACKGROUND

¶ 5                    Initial Disability Determination and the 2017 Proceedings

¶ 6    Koniarski joined the CPD in August 2003. In her third week at the police academy, she sustained severe trauma to her right ankle during a training exercise, fracturing her right lower tibia and severely damaging three ligaments. In 2005, after an evidentiary hearing, the Board found her disabled and awarded her a 75% duty disability benefit.

¶ 7    Pursuant to section 5-156 of the Pension Code (40 ILCS 5/5-156 (West 2016)) (Code), Koniarski received periodic medical examinations to determine whether she had recovered from her disability. On March 21, 2016, Koniarski was examined by Dr. Peter Orris, a Board-appointed physician, who concluded that "[s]he is not able to perform as a full duty officer and therefore, as she was injured before finishing the academy, remains disabled unless the CPD can find an accommodation for her."

¶ 8    On January 26 and February 24, 2017, the Board conducted a hearing on Koniarski's disability status. Since it was undisputed that Koniarski was not physically capable of full-duty police work, the only issue considered was whether the CPD was able to provide a limited-duty accommodation.

¶ 9        Sergeant Sidney Pennix testified that the academy would not make accommodations for a recruit's[1] physical disability, recruits were not allowed limited or convalescent duty during the academic phase of training, and the requirements for graduation could not be suspended, including the POWER test. The POWER test was administered three times during recruit training and included a timed one-and-a-half-mile run. Pennix confirmed that failing the POWER test was grounds for termination.

¶ 10       Commander Jonathan Johnson, the CPD's acting director of human resources, testified that the CPD has limited-duty positions involving administrative and office work that could be performed by disabled officers. Johnson was initially unsure whether Koniarski was eligible for such a position without completing her academy training "because she hasn't completed her full stay with the academy" but ultimately testified that the CPD would be able to accommodate Koniarski "[b]ecause she would be no different than anyone else that would be brought back from, say, a disability status."

¶ 11       Sergeant Thomas Risley likewise testified that limited-duty positions were available for disabled officers but was unable to answer whether a recruit who had not completed her academy training would be eligible for such a position.

¶ 12       On February 14, 2017, the Board found that Koniarski was able to return to service with the CPD and terminated her disability benefits, effective April 30, 2017. She subsequently applied for reinstatement with the CPD and resumed her police academy training on April 11, 2017. She also filed an administrative review action in the circuit court challenging the Board's decision terminating her disability benefits.

---

[1] Although Koniarski is referred to as a "recruit" throughout the record, the official job title listed in the City of Chicago Determination Notice is "Probationary Police Officer."

¶ 13        Meanwhile, on April 20, 2017, Koniarski was examined by Dr. David Garras, a doctor appointed by the city of Chicago. Dr. Garras' diagnosis was that she had posterior tibial tendinitis in her right leg and an acquired short Achilles tendon in her right ankle, both of which were caused by her 2003 ankle fracture. He noted that she wore a Richie brace "at all times" and should continue wearing the brace "as instructed." He additionally prescribed the use of a cane. He described her physical restrictions as follows:

> "Unfortunately given her severe deformity and reliance on bracing and assistive devices for ambulation, she is restricted to light duty with no running, jumping, prolonged standing or walking, strength and agility testing. This will likely be a permanent restriction unless the patient receive[s] surgical intervention. Even after surgical intervention she may not be able to return to full duty given the amount of time since her injury."

¶ 14        In a medical questionnaire completed for Koniarski's reasonable accommodation request as a city of Chicago employee, Dr. Garras opined to a reasonable degree of medical certainty that Koniarski's impairment was permanent. He also indicated that although surgery might improve her condition, it was not a guarantee. Regarding her work restrictions, he stated that she could not stand for prolonged periods or walk for more than one block or up more than one flight of stairs; she could not squat, kneel, stoop, or twist her ankle or lower leg; she could not climb ladders or lift heavy equipment; and she used a cane to walk "as needed." He recommended that Koniarski be given desk duty only.

¶ 15        From April 17 to May 31, 2017, at the direction of her academy superiors, Koniarski wrote a series of letters to Keith Calloway, the deputy chief of the education and training division, stating that she could not participate in various academy training exercises due to her

medical restrictions. Specifically, she could not participate in control tactics training, physical training, handcuffing class, or perform the POWER test.

¶ 16        Upon completing 25 weeks of academy classes, Koniarski learned she could not "get [her] star because [she] did not participate in PT [physical training], so they would not allow [her] to take the state test." She requested an accommodation "of performing only desk work" which the city denied. According to the September 29, 2017 Determination Notice, the requested accommodation would have removed "the essential functions of the job of Probationary Police Officer," and "no effective accommodation exists which would allow the employee to perform the essential functions of his/her current job without imposing an undue hardship or causing a direct threat to the safety of the employee or others." Unable to graduate with the rest of her class on October 6, 2017, Koniarski went on "no-pay status."

¶ 17        On October 23, 2017, circuit court Judge Neil Cohen remanded the matter back to the Board for further proceedings. On December 18, 2017, the Board determined that Koniarski was "unable to perform any assigned duty or duties in the police service" and restored her disability benefits.

¶ 18                                The Present Action

¶ 19        On June 28, 2018, the Board scheduled another status review hearing based on "[n]ewly acquired information" consisting of several video recordings of Koniarski walking and performing various activities without a cane and/or ankle brace. Koniarski's disability benefits were suspended, effective July 1, 2018, pending completion of the hearing before the Board.

¶ 20        At the hearing, Officer Patricia Gallagher testified that she was employed in the CPD Medical Integrity Unit and was assigned to conduct surveillance of Koniarski in June and July 2017. She recorded a number of videos that were introduced at the hearing.

¶ 21    A June 29 video showed Koniarski and another individual carrying a mattress; Koniarski was holding her end of the mattress with both hands and was not using a cane. A July 2 video showed Koniarski briefly walking alongside her brother without a cane, an ankle brace, or any noticeable limp. Another July 2 video showed her brother pushing a motorcycle up a ramp into a moving truck while Koniarski helped to balance the motorcycle from behind. Gallagher never saw Koniarski running or jumping, but she did see her walking "a lot" on July 2. She made approximately 15 trips out the back door and down a flight of eight steps to a U-Haul where she and her brother were loading boxes. Koniarski did not appear to be using a cane or ankle brace during any of those trips.

¶ 22    The fourth and fifth videos, from July 5, depicted Koniarski walking through a mall parking lot and, later, walking back to her car carrying a 37-pound microwave. She was not using a cane and no ankle brace was visible in either video.[2]

¶ 23    The Board also considered medical evidence from Dr. Garras, Dr. Orris, Dr. Jason Rosenblum, and Dr. Anjanipriya Tallamraju.[3] All four doctors agreed that Koniarski has significant physical limitations and cannot run, perform combat maneuvers, or effectuate arrests.

¶ 24    Dr. Garras directed Koniarski not to engage in "running, jumping, prolonged standing or walking, strength and agility testing." He prescribed the use of a cane and continued use of an ankle brace. He recommended a job limited to desk duty and referred Koniarski to Athletico for a job-specific Functional Capacity Evaluation (FCE). The FCE resulted in a finding that Koniarski "does NOT demonstrate the physical capabilities and tolerances to perform all the essential job functions of the job." Dr. Garras subsequently concluded that Koniarski could

_____

[2] Koniarski testified that she was wearing her brace and that it was concealed by her long pants.
[3] Dr. Rosenblum and Dr. Tallamraju have been Koniarski's treating physicians since 2009.

return to work with the restrictions identified in the FCE. Specifically, she could not lift more than 40 pounds or carry 15 pounds more than 1000 feet and was instructed to avoid "repetitive squatting and kneeling and kicking."

¶ 25    Dr. Orris examined Koniarski on March 21, 2016. He reported that Koniarski could walk without assistance but had difficulty walking more than one or two blocks without "significant pain and discomfort." He also observed that she had a limited range of motion in her right ankle and was not able to perform the duties of a full officer. Having been "injured before finishing the academy," Dr. Orris concluded that she "remains disabled unless the CPD can find an accommodation for her."

¶ 26    Dr. Rosenblum opined that Koniarski had posterior tibial tendinitis and ankle joint arthritis, both of which were chronic conditions. Due to the deformity of her right foot, she could not safely engage in long-term walking, running, sit-ups, shooting, lifting loads over 45 pounds, or the POWER test. The CPD surveillance videos did not change his opinion, since the activities that Koniarski performed in those videos were "within her limits" and her condition could "increase and decrease throughout the day."

¶ 27    Similarly, Dr. Tallamraju opined that Koniarski was "unable to perform activities such as running, long term walking, situps, power tests, and shooting safely due to her right foot deformity." He stated that her condition had progressively gotten worse and that she wore an ankle brace and used a cane "for gait stability as needed."

¶ 28    Koniarski testified that there were many training maneuvers she could not perform at the police academy, including combat stances, kicking, kneeling, and falling and rolling. As of January 22, 2019, restrictions of "[n]o combat movements or kicking" were still in place. She

acknowledged walking around the police academy without her cane "at times" but explained that she had been prescribed cane use on an "as needed" basis.

¶ 29    In its findings, the Board stated that Koniarski was "not a credible witness" since she "portray[ed] instability" when appearing before the Board but did not display the same instability in the video recordings outside the Board's presence. The Board also speculated that "the CPD's decision in not providing Koniarski a job may well be grounded in their investigation of Koniarski and the video recordings obtained which show that contrary to Koniarski's representations to the CPD she is able to ambulate without a cane or ankle brace."

¶ 30    On March 28, 2019, the Board entered the following order: "The Board finds that Koniarski can perform an assigned limited duty position with the CPD and is therefore not disabled as defined in the Act. Koniarski's duty disability benefits shall therefore cease effective June 30, 2018, the date Koniarski's benefits had been suspended."

¶ 31    On April 3, 2019, Koniarski began the process of being reinstated to CPD service. On May 16, 2019, Officer Karen Weathersby-Lee informed Koniarski that her employment with the CPD was terminated. She received a termination letter stating as follows:

> "Based on consultation with the Illinois Law Enforcement Training and Standards Board and pursuant to the Illinois Police Training Act (50 ILCS 705) Section 8.1(a) you are no longer eligible for a permanent appointment as a law enforcement officer as defined in the Act. Training is required to be completed within six months, and, if not completed and passed, you are required to forfeit your position.
>
> Based upon your probationary police officer status and previous inability to complete and successfully pass the Minimum Standards Basic Law Enforcement and County Correction Training Course offered to you by the Chicago Police Department and

the City of Chicago, you are hereby terminated from employment with the Chicago Police Department effective immediately."

¶ 32    Koniarski filed an administrative review action challenging the Board's March 28, 2019 decision terminating her benefits. On February 19, 2020, the circuit court reversed the Board's decision, finding that it was against the manifest weight of the evidence. The court further found:

> "2. All medical evidence introduced in the record indicates Petitioner has not fully recovered from her disability.
>
> 3. There is no evidence in the record that Petitioner has recovered from her disability.
>
> 4. The Court has reviewed all of the videos submitted by the Board and finds they are not inconsistent with Petitioner's claim she is disabled."

The Board now appeals.

¶ 33                                ANALYSIS

¶ 34    In an administrative review action, we review the decision of the Board, not the decision of the circuit court. *Wade v. City of North Chicago Police Pension Board*, 226 Ill. 2d 485, 504 (2007). It is the Board's province to judge the credibility of witnesses, resolve conflicts in the evidence, and draw inferences from the facts. *Heabler v. Illinois Department of Financial & Professional Regulation*, 2013 IL App (1st) 111968, ¶ 17. We defer to the Board's factual findings unless they are against the manifest weight of the evidence, meaning that the opposite conclusion is clearly evident. *Id.* at 504-05. Although this is a considerably deferential standard (*Kouzoukas v. Retirement Board of Policemen's Annuity & Benefit Fund of City of Chicago*, 234 Ill. 2d 446, 463 (2009)), we are mindful that "our review cannot amount to a rubber stamp of the proceedings below merely because the Board heard witnesses, reviewed records, and made the

requisite findings." *Bowlin v. Murphysboro Firefighters Pension Board of Trustees*, 368 Ill. App. 3d 205, 211 (2006).

¶ 35       The Code defines "disability" as "[a] condition of physical or mental incapacity to perform any assigned duty or duties in the police service." 40 ILCS 5/5-115 (West 2018). The Board terminated Koniarski's benefits under section 5-156 of the Code, which provides:

> "A disabled policeman who receives a duty, occupational disease, or ordinary disability benefit shall be examined at least once a year by one or more physicians appointed by the board. When the disability ceases, the board shall discontinue payment of the benefit, and the policeman shall be returned to active service." 40 ILCS 5/5-156 (West 2018).

¶ 36       The Board argues that its order terminating Koniarski's benefits was not against the manifest weight of the evidence for two reasons. First, it claims that Koniarski's testimony regarding her physical condition was not credible. Alternately, even if Koniarski is physically incapable of full-duty police work, the Board argues that she is not "disabled" within the meaning of the Code because she can still perform a limited-duty position.

¶ 37       The Board's credibility determinations are based on surveillance videos showing Koniarski walking and carrying objects without the use of a cane or visible ankle brace. However, Koniarski testified that she is only required to use a cane and ankle brace "as needed" and that she openly walked around the academy without a cane "at times."

¶ 38       More importantly, with or without a cane or ankle brace, it is undisputed that she is unable to perform all the physical tasks necessary for full-duty police work, such as combat maneuvers, running, and kicking. As noted by the circuit court, "[a]ll medical evidence introduced in the record indicates Petitioner has not fully recovered from her disability." See *Kouzoukas*, 234 Ill. 2d at 465-66 (Board's determination that officer's pain was "subjective" and

"not demonstrated by objective proof" was against the manifest weight of the evidence since "every doctor who examined [her] believed that she was, indeed, experiencing pain"). As to the video evidence, Dr. Rosenblum clarified that the videos did not change his opinion of Koniarski's condition since the actions she took were "within her limits" and her condition could "increase and decrease throughout the day." Moreover, the ability to carry a microwave through a parking lot without assistance does not establish that Koniarski is able to perform full duty police work.

¶ 39    Finally, where the Board determines that an officer has recovered from her disability under section 5-156 of the Code, CPD is not required to accept that conclusion. *Buttitta v. City of Chicago*, 9 F.3d 1198, 1204 (7th Cir. 1993). But if, as in the instant case, "the Police Department denies reinstatement because of disability, whether new or pre-existing, the Board must continue payment of the benefit." *Id.*

¶ 40    In this regard, *Kouzoukas*, 234 Ill. 2d 446, is controlling. Officer Kouzoukas had chronic back pain that rendered her unable to return to full police duty. The Board found that she was not "disabled," based on the testimony of a CPD officer that the CPD had positions that could accommodate her restrictions. *Id.* at 469. However, the record reflected that the CPD never offered her such a position. On the contrary, due to her physical limitations, they declined to reassign her to any position. *Id.* at 469-70.

¶ 41    Our supreme court reversed the Board's decision, finding it against the manifest weight of the evidence. The court explained that a person with physical limitations might not be disabled within the meaning of the Code "if a position is made available to her which can be performed by a person with her physical disability." (Internal quotation marks omitted.) *Id.* Since no such position was offered to Kouzoukas, "there is no way to know whether [she] is qualified for and

capable of performing this duty, whether the position is open and available to her, or whether the position would, in fact, accommodate [her] restrictions." *Id.* at 469-70.

¶ 42     Under these facts, our supreme court held that Kouzoukas remained "disabled" within the meaning of the Code. *Id.* at 471. The court stated that "[t]o hold otherwise would be to place Kouzoukas in an untenable 'catch 22' situation—unable to work because the Chicago police department will not assign her to a position in the police service which she can perform, yet unable to obtain disability benefits." *Id.*

¶ 43     Similarly, in this case, the hypothetical positions that Johnson and Risley testified might accommodate Koniarski's physical limitations were never offered to her. When Koniarski applied for a limited-duty desk job as an accommodation for her disability in 2017, her request was denied because "no effective accommodation exists" that would allow her to perform the essential functions of being a probationary police officer "without imposing an undue hardship or causing a direct threat to the safety of the employee or others." Additionally, Koniarski was unable to graduate from the police academy in 2017 because she could not perform the necessary physical training. But when she applied for reinstatement with CPD in 2019, her employment was terminated due to her failure to complete her training within the requisite six months.

¶ 44     Under these circumstances, where no limited-duty position is available to Koniarski and the CPD has expressly found that it cannot accommodate her physical limitations, she remains disabled and is entitled to disability benefits.

¶ 45     Contrary to the Board's speculation that "the CPD's decision and failure to reinstate Koniarski may well have been grounded in their view as to Koniarski's credibility and truthfulness as a result of their investigation of her," the record confirms that CPD's denial of Koniarski's 2017 accommodation request was based on its determination that "no effective

accommodation exist[ed]." Moreover, CPD's termination of Koniarski's employment in 2019 was based on section 8.1(a) of the Illinois Police Training Act (50 ILCS 705/8.1 (West 2018)), which governs the appointment of full-time police officers.

¶ 46    At oral argument before this court, the Board argued that Koniarski may be ineligible for duty disability benefits because she was injured before completing her training and has never seen active police duty. Since the Board did not raise this argument in its brief, that issue is not properly before us. The sole issue in this appeal is whether the Board properly terminated Koniarski's benefits based upon its finding that "Koniarski can perform an assigned limited duty position with the CPD and is therefore not disabled as defined in the Act." For the reasons previously discussed, we consider this finding to be against the manifest weight of the evidence. Accordingly, Koniarski is entitled to reinstatement of her 75% duty disability benefits, retroactive to the date her benefits were terminated.

¶ 47    As a concluding matter, Koniarski requests attorney fees under section 5-228(b) of the Code (40 ILCS 5/5-228(b) (West 2018)), which provides:

> "If any policeman whose application for either a duty disability benefit under Section 5-154 or for an occupational disease disability benefit under Section 5-154.1 has been denied by the Retirement Board brings an action for administrative review challenging the denial of disability benefits and the policeman prevails in the action in administrative review, then the prevailing policeman shall be entitled to recover from the Fund court costs and litigation expenses, including reasonable attorney's fees, as part of the costs of the action."

This appeal does not involve an officer's application for duty disability benefits under section 5-154.  See 40 ILCS 5/5-154 (West 2018). Rather, it involves proceedings initiated by the Board

under section 5-156 to establish continuing proof of disability. See 40 ILCS 5/5-156 (West 2018). Accordingly, Koniarski's request for fees is denied.

¶ 48                                CONCLUSION

¶ 49        For the foregoing reasons, we affirm the circuit court's reversal of the Board's decision to terminate Koniarski's disability benefits.

¶ 50        Affirmed.