2024 IL App (1st) 231993

FIFTH DIVISION
November 8, 2024

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

No. 1-23-1993

| | | |
|---|---|---|
| TAMICA N. RAINEY, | ) | |
| | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| | ) | Cook County. |
| v. | ) | |
| | ) | No. 22 CH 11069 |
| THE RETIREMENT BOARD OF THE POLICEMEN'S | ) | |
| ANNUITY AND BENEFIT FUND OF THE CITY OF | ) | Honorable |
| CHICAGO, | ) | Joel Chupack, |
| | ) | Judge Presiding. |
| Defendant-Appellant. | ) | |

PRESIDING JUSTICE MIKVA delivered the judgment of the court, with opinion.
Justices Oden Johnson and Mitchell concurred in the judgment and opinion.

## OPINION

¶ 1    In 2017, plaintiff Tamica Rainey was awarded duty disability benefits under section 5-154 of the Illinois Pension Code (Code) (40 ILCS 5/5-154 (West 2016)). Defendant, the Retirement Board of the Policemen's Annuity and Benefit Fund of the City of Chicago (Board), set Officer Rainey's disability status for hearing in 2022, and ultimately terminated her duty disability benefits based on its finding that she was "no longer disabled as a result of her duty-related injuries."

¶ 2    Officer Rainey filed a complaint for administrative review, and the circuit court reversed the Board's decision. The circuit court held that the Board's determination that Officer Rainey was no longer disabled, where the Board was aware that the Chicago Police Department (CPD) would

not reinstate her for medical reasons, was against the manifest weight of the evidence. The circuit court relied on *Kouzoukas v. Retirement Board of the Policemen's Annuity & Benefit Fund of Chicago*, 234 Ill. 2d 446, 470 (2009), where our supreme court recognized that an officer was disabled if she "had a physical condition which made her incapable of performing any assigned duty and *** no position within her limitations was offered to her." The circuit court reversed the Board's decision outright and awarded Officer Rainey a duty disability benefit pension, retroactive to the date the Board had discontinued it. The circuit court also awarded Officer Rainey attorney fees and costs under section 5-228(b) of the Code (40 ILCS 5/5-228(b) (West 2022)).

¶ 3    The Board has appealed, arguing that its decision should be affirmed because it was not against the manifest weight of the evidence and it was error to award Officer Rainey attorney fees and costs. For the following reasons, we reverse the Board's decision denying Officer Rainey continuing duty disability benefits and affirm the circuit court's award of attorney fees and costs. We remand for a calculation of the additional fees and costs owed to Officer Rainey based on this appeal.

¶ 4                                    I. BACKGROUND

¶ 5                      A. Officer Rainey's Initial Award of Duty Disability Benefits

¶ 6    Officer Rainey was appointed as an officer with the CPD on April 26, 2004. In 2016, she applied for duty disability pension benefits, based on injuries she received in two work-related motor vehicle accidents. According to an "Injury on Duty Report" dated February 9, 2013, she "was a passenger in a Police vehicle that rolled over several times after a tire blow-out on the Eisenhower expressway." In her affidavit in support of her duty disability benefits application, Officer Rainey stated that, as a result of that accident, she had a "concussion, bilateral detached retinas, and injuries to [her] right shoulder with two (2) dislocated ligaments, right hip, neck, lower

back, right knee, and right ankle." According to an "Injury on Duty Report" dated March 13, 2015, Officer Rainey "sustained injuries to her torso (acute back contusion) as a result of a motor vehicle crash." Officer Rainey explained in her affidavit that she was "responding to a job assigned" to her in an unmarked police vehicle when she "was in a traffic crash with another vehicle" that caused injuries to her "neck, lower back, left shoulder, left knee, right hand, and right foot."

¶ 7 In June 2017, as required by statute (see 40 ILCS 5/5-154 (West 2016)), Dr. Rajeev Khanna conducted an independent medical examination (IME) and completed a 20-page report, diagnosing Officer Rainey with "[n]eck pain-probable cervical disc syndrome," lumbago, a right-hand sprain, "[r]ight shoulder pain-possible impingement syndrome versus labrum tear," a right medial meniscus tear, and "[r]ight foot pain – possible Morton's Neuroma." Dr. Khanna said that Officer Rainey was "unable to return to limited duty or full duty at [that] time as she would have difficulty driving and/or safely carrying and handling a department approved firearm" or "effectuating an arrest of an arrestee who [was] an active resistor." He concluded that her "disabling injury [wa]s causally related to" the two motor vehicle accidents and that her "most significant discomfort" was "her neck and right shoulder." Dr. Khanna opined that Officer Rainey had "failed conservative treatment" and that "[i]f the treating spine surgeons and orthopedic surgeons believe[d] a cervical fusion and right shoulder arthroscopy would benefit [Officer] Rainey, she should pursue surgical intervention."

¶ 8 The Board held a hearing on Officer Rainey's application for benefits on January 26, 2017, and she was awarded a duty disability benefit of 75% of her salary. The benefits continued until June 30, 2022, when the Board discontinued them, effective July 1, 2022.

¶ 9 B. The Board's Termination of Officer Rainey's Duty Disability Benefit

¶ 10 After she was awarded her benefit, Officer Rainey saw Dr. Peter Orris annually. According

to the Board's findings of fact, before April 2021, Dr. Orris had "consistently found [her] disabled from performing full and unrestricted police duties due to her cervical pathology." In his April 9, 2021, report, Dr. Orris said that Officer Rainey "continue[d] to complain of upper extremity pain, neck pain, right shoulder pain," and that her medical records from that year had "evidence of multiple chronic problems with her progressing cervical spine pathology (contributed to by the IOD [(injury on duty)]) superimposed on a Chiari I malformation (Cerebellum extending from Skull to neck which is congenital) being the primary Disabling physical factor." Dr. Orris noted that "[i]n addition she ha[d] been diagnosed with [post-traumatic stress disorder (PTSD)] and [wa]s being treated." Dr. Orris concluded:

> "Of. Rainey remains disabled as she is unable to safely carry handle and use her weapon due to her cervical pathology. Though the specifics of her continued disablement and cause are not entirely clear, I would ask that I see her in early 2022 with her rehabilitation records and return to her neurosurgeon. At that point I would evaluate whether an IME would be helpful in sorting out this complex situation."

¶ 11 The Board then directed Officer Rainey to see Dr. M. Bryan Neal for an IME, with a focus on her cervical spine and right shoulder. Dr. Neal completed a 25-page IME report. He examined Officer Rainey and also reviewed and summarized Officer Rainey's medical records from February 2013 through April 2021. He considered her medical history, her current symptoms, and the results of tests that measured range of motion, strength, palpation, and reflexes. Dr. Neal also obtained digital radiographs of Officer Rainey's cervical spine and right shoulder.

¶ 12 Dr. Neal diagnosed Officer Rainey with "[m]edically unexplainable subjective" pain in both her neck and right shoulder "with suspected symptom magnification, amplification and/or fabrication, and suspected lack of full cooperative" effort with the exam. He concluded that she

"d[id] not have any clinically significant organic cervical spine or right shoulder conditions, and that neither [her] cervical spine nor right shoulder [wa]s a current disabling condition." He also found that her "right shoulder condition and her neck condition" were *not causally related to* the March 13, 2015 work incident." (Emphasis in original.)

¶ 13     Dr. Neal also said that it was his "professional opinion that there [were] underlying psychosocial undercurrents which confound[ed] this clinical situation." He concluded that Officer Rainey could "safely carry, handle, and use a firearm," "maintain an independent and stable gait," "safely drive and operate a motor vehicle," and "arrest an arrestee who might be an active resister." Dr. Neal said that because he found she did not have either a "clinically significant" condition of her cervical spine or right shoulder, Officer Rainey "[*wa*]*s able to perform full-duty police officer work without restrictions*." (Emphasis in original.) At the conclusion of his report, Dr. Neal stated his opinions were within "a reasonable degree of medical and surgical certainty."

¶ 14     On March 11, 2022, the Board sent notice to Officer Rainey that it would hold a hearing on March 24, 2022, via video-conference, to determine whether her duty disability benefits should be continued, modified, or discontinued. Officer Rainey was advised to "present to the Board for its consideration all proofs which [she] deem[ed] necessary to establish entitlement to the benefits sought or a continuation of any benefit previously awarded." She was also provided with a website where she could access the Board's rules of procedure and advised that she could be represented by an attorney.

¶ 15     At the March 24 hearing, Officer Rainey, appearing without counsel, requested a 60-day continuance so she could "fulfill upcoming medical appointments [for] her disability," obtain the medical documents she had already requested from her doctors, and possibly obtain counsel. The Board granted her a continuance to June 30, 2022.

¶ 16    At the June 30, 2022, hearing, the Board's attorney, Mr. Reimer, told Officer Rainey that the Board had only just received her document submission and that both the Board and the Board's doctor needed an opportunity to review it. The Board voted to suspend Officer Rainey's benefits, effective the next day, because she had failed to timely provide her medical records 14 days prior to the June 30, 2022, hearing date. The Board set a date for an additional hearing to give it a chance to review her submission. The Board continued the hearing to its next meeting in August 2022.

¶ 17    Officer Rainey's submission to the Board included her 2016 duty disability benefits application and almost 100 pages of medical records from 2016 through 2022 regarding her cervical and lumbar spine, right shoulder, knees, right hand, eyes, and "[n]euro/psychiatry." These medical records were presented without testimony. While they are somewhat difficult to understand without such testimony, they do include the following notations. With respect to her cervical spine, the notations refer to a "[d]egenerative change" in 2016, magnetic resonance imaging (MRI) findings "of chronic duration" in 2018, and a decrease in her range of motion for "cervical flexion, extension and axial rotation" in 2022. As to her shoulder, in 2022, she was found to have "[i]mpingement [s]yndrome" and a rotator cuff tear, and one doctor noted "[d]egenerative changes" in part of her shoulder and said the "comparison [wa]s consistent with a relatively progressive course."

¶ 18    On July 26, 2022, Dr. Neal completed an addendum to his own report after reviewing Officer Rainey's documents. Dr. Neal again opined that "*no current diagnosis* with respect to the cervical spine or right shoulder [was] related, caused, or resulting from the March 13, 2015 motor vehicle accident." (Emphasis in original.) Although Dr. Neal again found that Officer Rainey could carry a firearm, maintain her gait, and safely drive a motor vehicle, he concluded that she could "*not* *** safely effectuate an arrest of an arrestee who [was] defined as an active resistor."

(Emphasis in original.) Although he made clear that he "did not find [Officer Rainey] was disabled and unable to return to work in any assigned position," he also said:

"Regarding the 'prognosis' for the ability to return to police service, I do believe [Officer Rainey] is able to return to limited duty as documented above. It is my professional opinion there are significant underlying biopsychosocial undercurrents which create an extremely strong headwind against her to return to a full-duty police officer without any restrictions and who will be willing to arrest an arrestee who is an active resistor. This simply is not going to be the case in this individual at this time; although, *the reason this is the case is not related to any March 13, 2015 work incident*." (Emphasis in original.)

¶ 19     On August 3, 2022, the Board sent a notice to Officer Rainey for an August 25, 2022, hearing. At that hearing, Officer Rainey said she was not ready to proceed, explaining, "I have conferred with counsel and I would like to request a continuance in order to proceed with representation." The Board went into an executive session. Upon returning to open session, Officer Rainey was informed that the Board was not inclined to grant her request, and the following exchange occurred:

"MR. REIMER: Well, your benefits have been suspended, so you have nothing as far as an income source from—at least from the Board, you have no revenue stream and that's—the Board understands that, so here's a suggestion.

We could actually go ahead today kind of on an expedited basis, and what I would propose to you is we would admit all of the records, including the Board's exhibit and your exhibits and then if you wanted to say something, what the Board could do if you agree to it is you could ask the Board to award you an ordinary disability benefit.

It would—the Board could act on that today.

Is that something you would want to consider?

OFFICER RAINEY: Is that, as you guys say, without prejudice so that potentially in the future, you know, at a future hearing date, you guys would reconsider or reinstate the duty disability?

MR. REIMER: I would think that would be with prejudice, but I'm not the one that votes.

* * *

PRESIDENT STISCAK: And it will be with prejudice, meaning the duty disability is off the table, assuming the vote goes—whichever way it goes.

***

MR. REIMER: And here's what that means ***

The Board does not want to grant you a continuance, right?

They believe you've had enough, and, you know, the case law is pretty clear. I don't believe the circumstances that you're presenting are going to justify it.

So you can take the risk of having the Board go ahead today denying your disability benefits, your line-of-duty disability benefits or duty disability benefits, and that would mean there will be a decision and order where you're going to have to get an attorney to go through the administrative review process.

That's an option. That's a risk you take. That's your call. That's not my call. Nobody on the Board is telling you what to do.

But what they're trying to do is offer you a compromise, and the compromise if you want to take it—you don't have to—would be the Board would admit everything today and if you give specific authorization to the Board, the Board would award you an ordinary

disability."

¶ 20    Officer Rainey was given an opportunity to make a phone call, and the Board passed the case. When the case was recalled, Officer Rainey said, "I would like to continue to a future date without the benefit—to a date after the procedure that I have scheduled in October, preferably November or January." The Board denied Officer Rainey's request for a continuance, and the case proceeded to the hearing.

¶ 21    At that hearing, Mr. Reimer began by reviewing the procedures, including that Officer Rainey "ha[d] the burden of proving her entitlement to the continuation of her disability benefits." The Board's exhibits—including Dr. Neal's IME report and the addendum—and Officer Rainey's submission to the Board were put into evidence.

¶ 22    Officer Rainey then presented her opening statement. She talked about the first accident on February 9, 2013, how she "did everything possible short of having surgery to get back to work," and how, after a year, she returned to full duty. The second accident then "exacerbat[ed] [her] neck and [her] lower back" and injured her left shoulder, left knee, right hand, and right foot.

¶ 23    Officer Rainey pointed out that Dr. Orris said she remained disabled, described issues with her right shoulder, and noted evidence of multiple chronic problems with her progressing cervical spine, in addition to her PTSD. At the conclusion of her opening statement, Officer Rainey said she was "available or willing to answer any questions."

¶ 24    The Board had no questions for her. When asked if there was any other evidence that she wanted the Board to consider, Officer Rainey said she wanted the Board to consider "that this process, not just this process, the hearings, but this entire disability process" was "devastating and detrimental to [her] life." She also said, "I think that I've provided multiple doctors' notes," and "I can't even go back to work because the police department won't even consider taking me back

to work until I'm cleared from my doctors that they've sent me to, so I can't even go back to seek my job unless I'm cleared." She said again, "I can't go back to work—if you guys deny me today, I can't go back to work tomorrow because I am not cleared." Officer Rainey said the "whole process [wa]s out of [her] control" and asked the Board "to consider all the information in front of [it]." When Mr. Reimer asked if that was all she wanted the Board to consider, she said, "Yes, sir."

¶ 25 Without going into an executive or closed session first, the Board moved to discontinue Officer Rainey's duty disability benefits, and that motion unanimously passed.

¶ 26 In a letter dated August 29, 2022, the acting executive director of the Policemen's Annuity and Benefit Fund of Chicago (Fund) informed the CPD human resources department that the Board had found Officer Rainey's "current medical condition is such that he/she c[ould] be returned to service with the" CPD and that she should "seek a return to CPD service."

¶ 27 On September 27, 2022, Sergeant Philonies McCray, the sergeant/commanding officer of the CPD medical services section, wrote to the director of the CPD human resources division, stating that Officer Rainey submitted to a physical examination on September 12, 2022, and that the evaluation disclosed she was "NOT MEDICALLY QUALIFIED to return to duty."

¶ 28 On October 17, 2022, Officer Rainey, through her attorney, filed a motion to reconsider the Board's decision to terminate her disability benefits. In that motion, Officer Rainey asked the Board to reconsider its oral ruling, as she had not been cleared by the CPD to return to work. Officer Rainey attached to her motion documentation showing that the CPD had not offered her a position, with or without restrictions.

¶ 29 On October 27, 2022, the Board issued its written decision and order. The Board concluded that Officer Rainey was "no longer disabled as a result of her duty-related injuries," and therefore its termination of her duty disability benefits effective July 1, 2022, was proper. The Board found

that "the objective medical evidence in the record establishe[d] [Officer Rainey] ha[d] recovered from her duty-related injuries for which she was awarded duty disability benefits, and [wa]s no longer disabled from police service." The Board noted that "Dr. Neal specifically attributed [Officer Rainey]'s inability [to return to full, unrestricted police duties] to significant underlying biopsychosocial undercurrents and 'not related to any March 13, 2015 work incident.' " According to the Board, the record contained "no objective medical evidence" to show Officer Rainey was disabled due to her duty-related injuries, but rather that her disability was the result of "unrelated psychiatric/psychological conditions."

¶ 30                                C. Circuit Court Proceedings

¶ 31     Officer Rainey filed her complaint in the circuit court on November 14, 2022, for both a writ of *mandamus* and for administrative review. On June 23, 2023, the circuit court reversed the Board's decision. Relying on our supreme court's decision in *Kouzoukas*, 234 Ill. 2d 446, the circuit court found:

> "Despite determining that [Officer] Rainey is able to return to work, CPD will not reinstate [Officer] Rainey to any position with or without restriction. *** The Board, however, discontinued her disability pension. This places [Officer] Rainey in a 'Catch-22' situation, same as the courts found in *Kouzoukas*, unable to work because the CPD will not assign her a position in the police service, but unable to obtain disability benefits. *Kouzoukas* requires the Board to reinstate disability benefits at 75% to [Officer] Rainey."

¶ 32     The circuit court also found that because Officer Rainey was the prevailing party, she was entitled to attorney fees and costs. On September 29, 2023, the circuit court denied the Board's motion for reconsideration. On March 15, 2024, the circuit court granted Officer Rainey's petition for attorney fees and costs, entering judgment in her favor and against the Board in the amount of

$33,981.94.

¶ 33    This appeal followed.

¶ 34                                    II. JURISDICTION

¶ 35    The circuit court denied the Board's motion for reconsideration on September 29, 2023, and the Board timely filed its notice of appeal on October 26, 2023. The Board appeals the court's June 23, 2023, order granting Officer Rainey's complaint for administrative review and its September 29, 2023, order denying reconsideration.

¶ 36    On April 29, 2024, we granted the Board's motion to file an amended notice of appeal to allow the Board to add the circuit court's March 15, 2024, order awarding attorney fees and costs.

¶ 37    We have jurisdiction over this appeal pursuant to Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994) and Rule 303 (eff. July 1, 2017), governing appeals from final judgments entered by the circuit court in civil cases.

¶ 38                                    III. ANALYSIS

¶ 39    Review of an administrative agency's decision is governed by the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2022)). The Code specifically provides that the Administrative Review Law "shall apply to and govern all proceedings for the judicial review of final administrative decisions of the retirement board provided for under this Article." 40 ILCS 5/5-228(a) (West 2022). With certain exceptions, jurisdiction to review final administrative decisions is vested, in the first instance, in the circuit court (735 ILCS 5/3-104 (West 2022)) and is commenced by the filing of a complaint for administrative review (*id.* § 3-103). When an appeal is taken from the circuit court's decision on a complaint for administrative review, we review the administrative decision rather than the decision of the circuit court. *Wade v. City of North Chicago Police Pension Board*, 226 Ill. 2d 485, 504-05 (2007).

¶ 40    Our standard of review depends on the nature of the question presented. *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 390 (2001). We review questions of law *de novo* (*id.*), we defer to an agency's factual findings unless they are against the manifest weight of the evidence (*City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 204 (1998)), and we review mixed questions of law and fact for clear error (*AFM*, 198 Ill. 2d at 391).

¶ 41    On appeal, the Board argues that we must affirm its decision to terminate Officer Rainey's duty disability benefits because it was not against the manifest weight of the evidence. In response, Officer Rainey relies on the fact that, under *Kouzoukas*, 234 Ill. 2d 446, a finding that a police officer is not disabled is against the manifest weight of the evidence where, as in this case, the CPD has refused to return that officer to work. As explained below, we agree with Officer Rainey, reverse the Board's decision on that basis, and affirm the decision of the circuit court, including its decision to award attorney fees and costs to Officer Rainey.

¶ 42                    A. The Board's Finding That Officer Rainey is No Longer

                    Disabled is Against the Manifest Weight of the Evidence

¶ 43    Officer Rainey argues—relying on *Kouzoukas*, 234 Ill. 2d at 470-72—that she is entitled to receive duty disability benefits because the CPD has found her not medically qualified to return to duty and that fact renders her disabled and entitled to benefits. The Board, which failed to cite *Kouzoukas* at all in its opening brief, argues in its reply brief that applying *Kouzoukas* here would be a "radical extension" of that case. We disagree and find, as did the circuit court, that Officer Rainey's situation fits squarely within the rule that our supreme court announced in *Kouzoukas*. We further find that the Board has forfeited any argument that there may be an exception to the rule in *Kouzoukas* where, as here, the Board has found an officer is no longer disabled as a result

13

of her initial duty-related injuries but is still disabled due to some unrelated cause. Accordingly, we reverse the Board's decision to discontinue Officer Rainey's duty disability benefit.

¶ 44     The question before our supreme court in *Kouzoukas* was whether the plaintiff there was disabled, as that word is defined in section 5-115 of the Code: " 'A condition of physical or mental incapacity to perform *any assigned duty* or duties in the police service.' " (Emphasis in original.) *Id.* at 469 (quoting 40 ILCS 5/5-115 (West 2006)). The court found that where the CPD would not return the officer in that case to active service, she had "carried her burden of proving that she was disabled, that is, that she had a physical condition which made her incapable of performing any assigned duty and that no position within her limitations was offered to her." *Id.* at 470.

¶ 45     In response to the Board's argument that "its decision to grant or reject a claimant's application for duty disability benefits should not be dependent on the availability of an assignment in [CPD] within the claimant's restrictions" because such a rule "encroach[ed] on the 'exclusive original jurisdiction' bestowed upon it by the Pension Code" *Id.* at 470-71 (quoting 40 ILCS 5/5-189 (West 2006)), the *Kouzoukas* court found:

> "The Board has the duty under the Code to determine whether a claimant is disabled. In the case at bar, [the plaintiff] presented evidence which established that she had chronic back pain which severely limited her ability to sit, stand, walk, drive, and wear a gunbelt. Moreover, because of these limitations, [the plaintiff's] doctors did not provide her with a release to return to work. As a result, the [CPD] would not reassign [the plaintiff] to *any* position. Under these circumstances, [the plaintiff] met her burden of proving that she was disabled. To hold otherwise would be to place [the plaintiff] in an untenable 'catch 22' situation—unable to work because the [CPD] will not assign her to a position in the police service which she can perform, yet unable to obtain disability benefits." (Emphasis

in original.) *Id.* at 471.

¶ 46    The language of section 5-156, which governs how proof of a disability should be furnished to the Board—initially and at status proceedings to determine whether a disability has ceased—encompasses the understanding the court had in *Kouzoukas* that a disability exists unless the officer is physically capable of active service. That statute provides, in relevant part, that "[w]hen the disability ceases, the board shall discontinue payment of the benefit, and the policeman *shall be returned to active service*." (Emphasis added.) 40 ILCS 5/5-156 (West 2022).

¶ 47    The Seventh Circuit's opinion in *Buttitta v. City of Chicago*, 9 F.3d 1198 (7th Cir. 1993), also confirms this. We look to federal cases as persuasive, but not controlling, authority. *People ex rel. Ryan v. World Church of the Creator*, 198 Ill. 2d 115, 127 (2001). *Buttitta* involved a due process claim and issues that are not relevant here. However, in its analysis of the due process rights created by the Code, the court examined the interaction between the Board's authority to award disability benefits and the police department's decision to reinstate an officer to active duty. The court explained that the Code "does not bestow upon the Pension Board the exclusive authority to determine when a disability ends and to compel the police department to return an officer to active duty." *Buttitta*, 9 F.3d at 1203. Instead, the court reasoned that because "the Board has a duty to preserve pension funds and the [CPD] has a duty to keep unfit officers off the streets," section 5-156 necessarily "require[d] both the Board and the [CPD] to be involved in th[e] process" of "transferring police officers between disability and active duty." *Id.* at 1204. The Seventh Circuit reasoned: "As we construe the statute, a disability ceases only if the Board and the department agree to that effect. Thus, if the [CPD] denies reinstatement because of disability, whether new or pre-existing, the Board must continue payment of the benefit." *Id.*

¶ 48    This court has followed *Kouzoukas* and held that if the CPD does not reinstate a police

officer for medical reasons, that officer is disabled for purposes of the Code. See *Ohlicher v. Retirement Board of the Policemen's Annuity & Benefit Fund of Chicago*, 2024 IL App (1st) 231699-U, ¶ 27 (finding the Board's conclusion that the plaintiff "was not disabled within the meaning of the Pension Code" to be against the manifest weight of the evidence because "the medical evidence established that his line-of-duty injury prevented him from performing duties of an active police officer and no evidence was presented that he was offered a limited duty position within the [CPD]"); *Koniarski v. Retirement Board of the Policeman's Annuity & Benefit Fund of Chicago*, 2021 IL App (1st) 200501-U, ¶¶ 40-44 (holding that "where no limited-duty position is available to [the plaintiff] and the CPD has expressly found that it cannot accommodate her physical limitations, she remains disabled and is entitled to disability benefits"). Although these are unpublished cases, we rely on them as persuasive authority, as we are entitled to do under Illinois Supreme Court Rule 23(e)(1) (eff. Feb. 1, 2023) (providing that a nonprecedential order entered under Rule 23(b) after January 1, 2021, "may be cited for persuasive purposes").

¶ 49 When the Board finally addresses *Kouzoukas* in its reply brief, it argues that where there is "a different disability unrelated to the original cause of disability," the officer need not be kept on duty disability benefits under *Kouzoukas*. The Board argues that "the new disability may or may not be related to the original injury and may or may not be related to an act of duty" and that "[w]ithout an application and examination of these new symptoms of disability, *Kouzoukas* isn't applicable." But the Board failed to make this argument until its reply brief and has therefore forfeited the argument. Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) ("Points not argued" in the appellant's opening brief "are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing.")

¶ 50 The Board's failure to address *Kouzoukas* in its opening brief is particularly disingenuous

here, where Officer Rainey has been relying on *Kouzoukas* since she filed her motion to reconsider the Board's oral decision, and the circuit court wholly relied on *Kouzoukas* in reversing the Board's decision. The Board's argument appears to be that that there is an exception to *Kouzoukas* where the Board finds, based on sufficient evidence, that a duty-related disability has ceased, but the officer is still disabled for another reason. However, that argument should have been presented in the Board's opening brief on appeal. As a result of the Board's failure to address *Kouzoukas* before its reply brief, the Board deprived Officer Rainey of the chance to respond to the Board's reading of the case in her brief and deprived this court of a fully developed discussion of what the Board would be allowed to do, under *Kouzoukas*, if it makes this finding.

¶ 51     At oral argument, Officer Rainey's counsel argued that the Board, having found that Officer Rainey was no longer disabled as a result of a duty-related injury but was still disabled, should have provided her with an ordinary disability benefit. Compare 40 ILCS 5/5-154(a) (West 2022) (providing that an active police officer who is disabled as the result of performing an act of duty is entitled to a duty disability benefit equal to 75% of the officer's salary, subject to certain exceptions) with *id.* § 5-155 (providing that a police officer who is disabled due to "any cause other than injury incurred in the performance of an act of duty" is entitled to an ordinary disability benefit of 50% of the officer's salary).

¶ 52     This may well be the appropriate course. The Board does not appear to doubt its own authority to reduce Officer Rainey's benefits to ordinary disability, as demonstrated by its "compromise" offer to her at the outset of the August 25, 2022, hearing. However, we will not review whether this reduction in benefits is the appropriate response, where, as here, the Board failed to either take that course or to even raise the question of what is allowed under *Kouzoukas* in this situation until its reply brief.

¶ 53                                   B. Attorney Fees

¶ 54    The Board also contends that the circuit court erred when it awarded Officer Rainey attorney fees and costs pursuant to section 5-228(b) of the Code. *Id.* § 5-228(b). This requires us to interpret that statute, which is a question of law that we review *de novo*. *Dawkins v. Fitness International, LLC*, 2022 IL 127561, ¶ 27.

¶ 55    Section 5-228(b) provides:

"If any policeman whose application for either a duty disability benefit under Section 5-154 or for an occupational disease disability benefit under Section 5-154.1 has been denied by the Retirement Board brings an action for administrative review challenging the denial of disability benefits and the policeman prevails in the action in administrative review, then the prevailing policeman shall be entitled to recover from the Fund court costs and litigation expenses, including reasonable attorney's fees, as part of the costs of the action."

40 ILCS 5/5-228(b) (West 2022).

¶ 56    The Board argues that this language is "clear and unambiguous," allowing only "for recovery of these monies after successful reversal of a denial of an application for duty or occupational disability," and therefore does not apply here where Officer Rainey was initially awarded duty disability benefits but those benefits were subsequently discontinued by the Board. We disagree.

¶ 57    We first note that the Code is meant to be liberally construed in favor of police officers. *Holland v. City of Chicago*, 289 Ill. App. 3d 682, 689-90 (1997). And our review of the language of the relevant provisions, when viewed in the context of the Pension Code as a whole, makes clear to us that this fee provision applies where, as in this case, an applicant for duty disability benefits has their benefits discontinued by the Board at a status hearing and succeeds in having that decision

by the Board reversed on appeal.

¶ 58 Section 5-154 is titled "Duty disability benefit; child's disability benefit" and provides, in part, that "[a]n active policemen who becomes disabled *** as the result of injury incurred *** in the performance of an act of duty, has a right to receive duty disability benefit during any period of such disability for which he does not have a right to receive salary." 40 ILCS 5/5-154(a) (West 2022. Section 5-154 provides for an ongoing right to benefits—during any period of such disability—but does not provide any procedures for applying for the benefit.

¶ 59 Section 5-156 contains those procedures that apply both to the initial application and to ongoing status hearings in which the officer's right to continued benefits is reviewed. That section is titled "Proof of disability—Physical examinations" and provides, in its entirety:

> "Proof of duty, occupational disease, or ordinary disability shall be furnished to the board by at least one licensed and practicing physician appointed by the board. In cases where the board requests an applicant to get a second opinion, the applicant must select a physician from a list of qualified licensed and practicing physicians who specialize in the various medical areas related to duty injuries and illnesses, as established by the board. The board may require other evidence of disability. A disabled policeman who receives a duty, occupational disease, or ordinary disability benefit shall be examined at least once a year by one or more physicians appointed by the board. When the disability ceases, the board shall discontinue payment of the benefit, and the policeman shall be returned to active service." *Id.* § 5-156.

¶ 60 Reading the two sections together, it is clear that there are not two distinct processes—one for applying for benefits and the other for discontinuing them. Rather, section 5-154 defines the benefit and the ongoing right to that benefit, and section 5-156 describes the process for obtaining

and reviewing the ongoing right to that benefit.

¶ 61    In 2022, Officer Rainey was before the Board on what the Board has referred to as a status hearing relative to her ongoing section 5-154 application for duty disability benefits. Officer Rainey's request for ongoing disability benefits was denied by the Board, and she then prevailed on administrative review. Under section 5-228(b), she brought "an action for administrative review challenging the denial of disability benefits" and prevailed. See *id.* § 5-228(b). She is entitled to costs and fees.

¶ 62    Section 5-228(b) applies only to officers who have applied "for either a duty disability benefit under Section 5-154 or for an occupational disease disability benefit under Section 5-154.1," clearly distinguishing them from officers who were denied *ordinary* disability benefits under section 5-155. *Id.* An occupational disease disability benefit is awarded to an officer who, after at least 10 years of service, "suffer[ed] a heart attack or any other disabling heart disease" but was not entitled to a duty disability benefit. *Id.* § 5-154.1(b). In providing for an award of fees and costs to an officer seeking duty disability or occupational disease disability but not ordinary disability benefits, the legislature clearly and logically prioritized officers who were wrongly denied job-related disability benefits.

¶ 63    While that is a rational distinction, distinguishing between officers who were wrongly denied job-related disability benefits in the first instance and those who were wrongly denied their ongoing job-related disability benefits, as the Board would have us do, makes no sense. As our supreme court has made clear, "[w]hen a proffered reading of a statute leads to absurd results or results that the legislature could not have intended, courts are not bound by that construction, and the reading leading to absurdity should be rejected." *Dawkins*, 2022 IL 127561, ¶ 27.

¶ 64    We acknowledge that this court has previously held that section 5-228(b) does not apply

to cases like this one, where the Board terminates an ongoing duty disability benefit. *Warner v. Retirement Board of the Policemen's Annuity & Benefit Fund of Chicago*, 2022 IL App (1st) 200833-U, ¶¶ 68-69; *Koniarski*, 2021 IL App (1st) 200501-U, ¶ 47. However, these decisions are unpublished and are therefore not binding authority that the circuit court must follow. Ill. S. Ct. R. 23(e)(1) (eff. Feb. 1, 2023). We find that both decisions were conclusory on this issue, and we do not find them persuasive.

¶ 65    The Board also relies on the fact that recent legislation has been proposed that would allow for an award of fees and costs under section 5-228(b) for any officer who was wrongly denied any disability benefit, including ordinary disability, and also specifically for officers whose benefits were wrongly terminated by the Board. See 103d Ill. Gen. Assem., House Bill 5264, 2024 Sess. The bill is clearly intended to extend the fee provision to officers who are denied *ordinary* disability. While the Board contends that bill also expands the fee provision by extending awards of fees and costs to officers whose duty or occupational disease disability benefits are terminated, the bill could also be intended as nothing more than a clarification in this regard, perhaps in response to this court's decisions in *Warner* and *Koniarski*. See *Bruso v. Alexian Brothers Hospital*, 178 Ill. 2d 445, 458 (1997) ("in amending a statute, the legislature is presumed to have been aware of judicial decisions interpreting the statute and to have acted with this knowledge"). In short, this new legislation is not determinative on this issue before us.

¶ 66    Accordingly, we affirm the circuit court's award of attorney fees and costs to Officer Rainey.

¶ 67                                 IV. CONCLUSION

¶ 68    For the foregoing reasons, we reverse the decision of the Board and order the Board to reinstate Officer Rainey's duty disability benefits retroactive to July 1, 2022. We affirm the circuit

court's judgment in all respects. We remand this case to the circuit court to allow that court to calculate an appropriate award of additional fees and costs incurred by Officer Rainey.

¶ 69    Circuit court judgment affirmed.

¶ 70    Board decision reversed.

¶ 71    Cause remanded with directions.

---

### *Rainey v. The Retirement Board of the Policemen's Annuity and Benefit Fund of the City of Chicago*, 2024 IL App (1st) 231993

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 22-CH-11096, the Hon. Joel Chupack, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Richard J. Reimer and Nemura G. Pencyla of Reimer Dobrovolny & LaBardi PC, of Hinsdale, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Ralph J. Licari of Ralph J. Licari & Associates, Ltd., of Northfield, for appellee. |

---